### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No.

CHRISTINE WAUGH,

Plaintiff,

v.

RIGNET, INC., JAMES H. BROWNING, GAIL SMITH, STEVEN E. PICKETT, KEVIN J. O'HARA, MATTIA CAPRIOLI, DITLEF DE VIBE, KEVIN MULLOY, KEITH OLSEN, and BRENT K. WHITTINGTON,

　　　　Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

---

　　　　Plaintiff Christine Waugh ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

　　　　1.　　This is an action against RigNet, Inc. ("RigNet" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of RigNet by Viasat, Inc. ("Viasat") and Royal Acquisition Sub, Inc., a wholly owned subsidiary of Viasat.

1

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company has offices in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of RigNet common stock.

7. Defendant RigNet is a technology company that provides customized communications services, applications, and cybersecurity solutions in the United States and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "RNET."

8. Defendant James H. Browning ("Browning") is Chairman of the Board of the Company.

9. Defendant Gail Smith ("Smith") is a director of the Company.

10. Defendant Steven E. Pickett ("Pickett") is Chief Executive Officer, President, and a director of the Company.

11. Defendant Kevin J. O'Hara ("O'Hara") is a director of the Company.

12. Defendant Mattia Caprioli ("Caprioli") is a director of the Company.

13. Defendant Ditlef de Vibe ("Vibe") is a director of the Company.

14. Defendant Kevin Mulloy ("Mulloy") is a director of the Company.

15. Defendant Keith Olsen ("Olsen") is a director of the Company.

16. Defendant Brent K. Whittington ("Whittington") is a director of the Company.

17. Defendants Browning, Smith, Pickett, O'Hara, Caprioli, Vibe, Mulloy, Olsen, and Whittington are collectively referred to herein as the "Individual Defendants."

18. Defendants RigNet and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On December 21, 2020, RigNet issued a press release announcing that it had entered into a definitive agreement whereby Viasat would acquire RigNet in an all-stock transaction. Under the terms of the agreement, RigNet's stockholders would receive a fixed exchange ratio of 0.1845 shares of Viasat stock for each RigNet share owned. The press release states, in pertinent part:

**Viasat to Acquire RigNet in All-Stock Transaction**

- Strategic combination expands Viasat's commercial connectivity offering

- RigNet stockholders to receive 0.1845 shares of Viasat stock per RigNet share, a 17.9% premium over both companies' 20-day volume-weighted average prices

3

- RigNet's Board of Directors and largest stockholder support transaction

- Transaction expected to close by mid-calendar year 2021

- Investor Conference Call Scheduled for Monday, December 21, 2020 at 8:30 a.m. Eastern Time

NEWS PROVIDED BY
**RigNet, Inc.**
Dec 21, 2020, 06:00 ET

HOUSTON, Dec. 21, 2020 /PRNewswire/ -- RigNet, Inc. (NASDAQ: RNET, the "Company"), a leading provider of ultra-secure, intelligent networking solutions and specialized applications, announced that its Board of Directors has unanimously approved the Company's entry into a definitive agreement whereby Viasat Inc. (NASDAQ: VSAT) will acquire RigNet in an all-stock transaction representing an enterprise value of $222 million, including RigNet's net debt as of September 30, 2020, based on the closing price of Viasat common stock on December 18, 2020. The strategic combination creates a vertically integrated communications company serving customers in industries that include government, airlines, residential, energy, and others by providing cutting-edge connectivity from the satellite to the end customer and delivering premier managed communications services coupled with a suite of advanced application solutions that include real-time machine learning and advanced cybersecurity.

"We are excited to announce this strategic combination with Viasat, a leading global innovator in satellite technology and service delivery," said Steven Pickett, RigNet's President and Chief Executive Officer. "This is a transformative merger with a company that is highly diversified across a number of important verticals, maintains a strong balance sheet, and is planning to expand its global satellite coverage significantly through its upcoming ViaSat-3 constellation. We believe the merger will create new opportunities for the combined companies to serve customers even better in energy and to expand more rapidly into other vertical markets. The combined companies will also be able to further accelerate the growth of RigNet's industry-leading AI-backed machine learning business, Intelie, and our other specialized apps, across a broader customer base than RigNet could have reached independently."

Rick Baldridge, Viasat's President and Chief Executive Officer, commented, "We believe that RigNet will be a wonderful addition to Viasat's expanding commercial connectivity program. We admire what Steve and his team have built over the last several years, performing well relative to peers in the energy sector, moving up the stack, and delivering some truly exceptional capabilities that are unique among their competitors. We see RigNet as an important element in our global expansion efforts and expect to achieve accretive synergies that go well beyond traditional

cost savings. There is tremendous upside potential here, and we look forward to closing the acquisition as quickly as possible so both companies and our stockholders can realize the benefits of the combination and fulfill our vision of connecting everyone, anywhere."

**Transaction Details**

Under the terms of the agreement, RigNet's stockholders will receive a fixed exchange ratio of 0.1845 shares of Viasat stock for each RigNet share owned. Based on the parties' volume weighted average prices ("VWAPs") for the 20 trading days ending on December 18, 2020, the transaction represents a 17.9% premium for RigNet's stockholders. Upon closing RigNet stockholders are expected to own approximately ~5.7% of Viasat's outstanding common stock. The all-stock transaction is intended to be tax-free to RigNet stockholders.

The transaction, which is expected to close by mid-calendar year 2021, is subject to customary closing conditions and regulatory approvals, including the approval of RigNet's stockholders. An affiliate of KKR & Co. Inc., RigNet's largest shareholder, has entered into a support agreement in which it has agreed to vote in favor of approving the merger, subject to certain conditions.

**Advisors**

Lazard Middle Market LLC and Baker Botts L.L.P. acted as RigNet's financial and legal advisors, respectively. LionTree Advisors LLC and Latham & Watkins LLP acted as Viasat's financial and legal advisors, respectively.

*     *     *

**About RigNet**

RigNet (NASDAQ: RNET) delivers advanced software and communications infrastructure that allow our customers to realize the business benefits of digital transformation. With world-class, ultra-secure solutions spanning global IP connectivity, bandwidth-optimized OTT applications, IIoT big data enablement, and industry-leading machine learning analytics, RigNet supports the full evolution of digital enablement, empowering businesses to respond faster to high priority issues, mitigate the risk of operational disruption, and maximize their overall financial performance. RigNet is headquartered in Houston, Texas with operations around the world.

**About Viasat**

Viasat is a global communications company that believes everyone and everything in the world can be connected. For more than 30 years, Viasat has helped shape how consumers, businesses, governments and militaries around the world communicate. Today, the Company is developing the ultimate global

communications network to power high-quality, secure, affordable, fast connections to impact people's lives anywhere they are—on the ground, in the air or at sea. To learn more about Viasat, visit: www.viasat.com, go to Viasat's Corporate Blog, or follow the Company on social media at: Facebook, Instagram, LinkedIn, Twitter or YouTube.

20. On February 1, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

### B. The Registration Statement Contains Materially False and Misleading Statements and Omissions

21. The Registration Statement, which recommends that RigNet shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) RigNet's and Viasat's financial projections; (ii) the financial analyses performed by RigNet's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

22. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the RigNet Board of Directors; RigNet's Reasons for the Merger; (iii) Opinion of RigNet's Financial Advisor; and (iv) RigNet Unaudited Forecasted Financial Information.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, RigNet shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning RigNet's and Viasat's Financial Projections

24. The Registration Statement omits material information concerning RigNet's and Viasat's financial projections.

25. The Registration Statement provides that, "in connection with its evaluation of the merger, RigNet management provided the RigNet projections to the RigNet board of directors, Viasat and Stifel in connection with its preparation of its fairness opinion."[1]

26. With respect to the RigNet projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Net income, (iii) Adjusted EBITDA, and (iv) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP financial metrics.

27. When a company discloses non-GAAP financial metrics in a Registration Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

---

[1] The "RigNet Projections" are "certain internal financial analyses and forecasts of RigNet prepared by the management of RigNet and provided to Stifel relating to RigNet's business[.]" *See* Registration Statement at 64.

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 20, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

28. Further, the Registration Statement further provides that, in rendering its fairness opinion, Stifel: (1) reviewed certain internal financial analyses and forecasts of Viasat prepared by the management of Viasat and provided to Stifel by the management of RigNet (together with certain assumptions relating to such analyses and forecasts reviewed with the management of RigNet) relating to Viasat's business (the "Viasat projections"); (2) reviewed and analyzed, based on the RigNet projections and the Viasat projections, the cash flows generated by RigNet and Viasat, as applicable, on a standalone basis to determine the present value of RigNet's and Viasat's respective discounted cash flows; and (3) analyzed the pro forma cash flows which may be generated by the combined company based upon the RigNet projections and the Viasat projections to determine the present value of the pro forma discounted cash flows of the combined company. *See* Registration Statement at 64.

29. Yet, despite this, the Registration Statement fails to disclose the Viasat projections, Viasat's projected cash flows, and the combined company's pro forma cash flows. This information is material to RigNet shareholders as RigNet stockholders are expected to own approximately 6% of Viasat's outstanding common stock and Stifel reviewed and relied on this information in rendering its fairness opinion and performing its financial analyses.

30. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any,

to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Stifel's Analyses

32. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Stifel.

33. With respect to Stifel's "*Selected Comparable Company Analysis*" of RigNet and Viasat and "*Selected Precedent Transactions Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of the companies and transactions Stifel observed in its analyses.

34. With respect to Stifel's "*Discounted Cash Flow Analysis*" of RigNet, the Registration Statement fails to disclose the individual inputs and assumptions underlying the (i) range of exit multiples from 5.0x to 7.0x, (ii) range of perpetuity growth percentages from 0.00% to 2.00%, and (iii) discount rates of 12.0% -14.0%.

35. The Registration Statement fails to disclose the following concerning Stifel's "*Discounted Cash Flow Analysis*" of Viasat: (1) the Viasat projections; and (2) the individual inputs and assumptions underlying the (i) range of exit multiples from 5.0x to 7.0x and 8.5x to 10.5x, (ii) range of perpetuity growth percentages from 1.00% to 3.00%, and (iii) discount rates of 7.0% - 9.0%.

36. The Registration Statement fails to disclose the following concerning Stifel's "*Pro Forma Combined Company Discounted Cash Flow Analysis*": (1) the pro forma combined company financial forecasts; (2) the financial benefits and other synergies provided by RigNet; (3) the unlevered free cash flows for the pro forma combined company for projected calendar years

2021 through 2024, and all underlying line items; (4) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.0% to 9.0%, (ii) multiples ranging from 6.5x to 8.5x, and (iii) growth range for the combined company in perpetuity of 1.0% to 3.0%; (5) the range of illustrative terminal values at the end of 2024; (6) the pro forma combined net debt of the pro forma combined company, the net debt of Viasat as of September 30, 2020, and the net debt of RigNet as of October 31, 2020; and (7) the pro forma fully diluted share count of the combined company.

37. The valuation methods, underlying assumptions, and key inputs used by Stifel in rendering its purported fairness opinion must be fairly disclosed to RigNet shareholders. The description of Sitfel's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, RigNet shareholders are unable to fully understand Stifel's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

   **3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

38. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

39. The Registration Statement provides that, "[f]rom November 2019, a total of 62 potential counterparties executed nondisclosure agreements with RigNet to explore a potential transaction relating to the Intelie division." Further, RigNet executed confidentiality agreements with "Financial Sponsor A" and "Financial Sponsor D" during the sales process.

40. The Registration Statement, however, fails to disclose the terms of all the

Company's nondisclosure and confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

41. Without this information, RigNet shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable RigNet shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

46. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

51. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

53. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9

promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 20, 2021                                  Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)

14

667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*

15